## BOONE v. VON ARX.

(First Division.   Juneau.   December 9, 1913.)

### No. 951A.

INJUNCTION (§ 22*) — NAVIGABLE WATERS — INJUNCTION — INEFFEC-
TUAL.

The plaintiff brought suit to restrain the defendant from erecting structures on tideland in front of plaintiff's upland, and between plaintiff's structures thereon and navigable water of the sea. Subsequent to bringing the suit, and prior to this decision, tailings from an adjacent stampmill filled the tideland in question and so changed the conditions that the relief prayed for, as between plaintiff and defendant, was rendered ineffectual. *Held*, where the relief prayed for is thus rendered ineffectual as between the parties by the act of persons not parties to the suit, it may be denied, and leave given to recast the issues, either at law or in equity.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 20, 21; Dec. Dig. § 22.*]

All the property claimed by plaintiff in this action is claimed under and by virtue of three certain deeds to him as follows: Deed from Robert Harrison, dated July 11, 1911, for "three certain cabins or small dwellings situated along the beach road and near what is known as Smallwood's beach store"; deed from the Cleaver estate, dated November 2, 1912, for "No. 8 cabin or house 20x24 feet, three rooms and attic

---

*See same topic & § NUMBER in Dec. & Am. Digs. Key No. Series & Rep'r Indexes

and shed attached, located on south side of beach walk, opposite Smallwood's old store building, Douglas, Alaska"; deed from United States marshal, dated December 8, 1911, for "that certain lot upon which is located the beach store and lodging house and the two lots adjoining the same on the north."

Neither the descriptions in the said deeds nor the delineation on Plaintiff's Exhibit 1 convey any intimation that the property covered is contiguous to the water, but, on the contrary, it distinctly appears by the exhibit that between said property and the water is a sidewalk, the ownership of which has not been shown to be in the plaintiff. So those deeds and any claim under them should be dismissed from consideration.

Reverting, then, to the remaining muniment of title, to wit, the deed from the marshal, and bringing to its aid the testimony of Mr. Boone as to what he went into possession of under said deed, it is found that the only upland upon which plaintiff bases or can base any claim of littoral rights is a small triangular piece lying between the northerly line of the sidewalk and the "original line of mean high tide," as shown on said exhibit.

It appears by the exhibit that the only structure on this strip of water front is the beach store, and that occupies about 50 feet in length along the sidewalk, beginning at the Treadwell end of the strip, and extends out over the water a distance of about 32 or 33 feet. Next to the beach store on this strip, towards Douglas, is an open, vacant space, about 10 feet in width, extending seaward from the sidewalk across the strip of upland. Then comes the lodging house and platform and shed, adjoining this open space on the Douglas side. This house, platform, and shed are not on the upland at all.

Between all this property and the sea (Gastineau Channel) is the railroad track of the Alaska Treadwell Gold Mining Company. On the seaward side of the said track, and in front of the "open vacant space" above referred to, is or was a toilet room built on piles, from the side of which room there was a flight of stairs leading down to the beach; this flight of stairs was almost in front (to the seaward) of the "store"

mentioned in said marshal's deed, and it is claimed by plaintiff that it was used by his grantors, Smallwood & Ehrlich, as a landing place for small boats in getting goods in and out of the store and as a means by which customers and others having business at the store could arrive and depart in their small boats. Plaintiff claims that the course of business was that goods or customers would disembark from small boats, at the steps, proceed thence over the railroad track (which seems to have been planked), and enter the rear of the store, and mutatis mutandis from the store to the beach.

Plaintiff claims that, at the time of bringing the action, the defendant was driving piles the entire length of plaintiff's said property, on the seaward side of said railroad track, thus preventing the small boats from reaching the steps, and was about to and would, if not restrained, erect a solid block of buildings on said piles, thus completely shutting off ingress to and egress from said upland strip, from and to the water. The court finds from the evidence that at the time of the commencement of the action, and at the time of trial, the plaintiff owned and was in possession of the strip of upland mentioned. I find also from the evidence that plaintiff's grantors, Smallwood & Ehrlich, used said stairs as a landing place for small boats, in connection with the business of said store.

It appears from the evidence that, before Smallwood built the store, the Treadwell Company had built their railroad track but the court is unable to determine whether the track was built before plaintiff's grantors acquired the strip of upland. It appears, too, from the evidence, that the piles driven by defendant were braced in such a way as to cause a hindrance to free and unobstructed access from the water to the strip of upland, for such small boats as might have loaded or unloaded at the stairs; and I do not believe that, under the evidence and in law, the railroad track, having been so constructed as to admit the passage of small boats thereunder, can be held to have cut off the littoral rights appertaining to said strip of upland, so far at least as said littoral rights relate to the ingress and egress of small boats.

Hellenthal & Hellenthal, of Juneau, for plaintiff.
John H. Cobb, of Juneau, for defendant.

JENNINGS, District Judge. If, at the time of the trial, matters had been in the same condition as they were at the time the action was brought, an injunction could have been issued restraining defendant from causing or continuing the existence of any structure which would prevent reasonable access to said strip of upland; but between the filing of the complaint and the trial of the action there appeared on the scene a vis major which has completely changed the aspect of affairs. It seems that the Treadwell Mining Company, which operates a large stampmill a short distance down Gastineau Channel from the locus of the upland strip in question, had for some time been discharging in front of this upland a large quantity of tailings from the mill. About 1,200 tons of tailings, débris, etc., has been daily deposited upon the tideland in front of this upland. By the time of the trial this had resulted in the creation of a large area of what is known as made land. These tailings have so filled up the shore in front of the property as to completely, or almost completely, submerge under sand and débris, not only the stairway in question, but the obnoxious piling also. The deposit is many feet in depth and is now on a level with the railroad track; and it has pushed out the line of mean high tide some 120 to 150 feet seaward from where said line appears on Plaintiff's Exhibit 1, so that what was water front at the commencement of the action was at the time of the trial far inland, and is so now.

Who is the owner of this made land? Does it belong to the plaintiff, whose contiguity to the sea it has destroyed? Does it belong to the Treadwell Company, who made it out of the tailings belonging to it, conveyed by it in its pipe line and by it deposited? Does it belong to the United States, the paramount proprietor, or does it belong to the defendant by virtue of the possession he has taken of it? It seems to me that these are pertinent questions, but the court will not undertake to decide them now. If this made land be considered as in the nature of avulsion, then the strip of what was once water front

ceases to be water front, for it is well settled that in avulsion the boundary line does not change. If avulsion, then plaintiff has lost his littoral rights, and has no equity for an injunction. If it be considered as accretion, then it may well be contended that it belongs to plaintiff just as much as the upland, and, if so, the action should be one for the recovery of the possession of land.

However that may be, the plaintiff does not in this action assert any ownership over the made land. This is not an action for the possession of or injury to land; it is a suit invoking the strong arm of the court to prevent the defendant from interfering with plaintiff's ingress and egress to the water highway from the strip of erstwhile water front. Before the court can grant such relief as that, it must appear that there is imminent danger of such interference, and then, too, the thing which the court is asked to do must not be a vain and foolish thing; it must be practicable, enforceable, beneficial. If the only effect of the doing of a thing be to cause vexatiousness and expense to a defendant while it benefits not the plaintiff, the court will not order the thing to be done. And so in this case an order for the changing of the manner of bracing the piles, or for the removal of the piles altogether, can result in no good to the plaintiff, for, if the piles were all removed, the made land would still prevent boats from reaching the stairway or any other part of the upland.

Plaintiff contends that the court should consider only the condition of affairs at the time the suit was brought, and not their condition at the time of the trial. I do not so read the law. Equity will not do a nonsensical thing; it will not, like Canute of old, bid the sea to stand still, nor will it say to the land, "Vanish thou into thin air," nor will it ignore the change of conditions rendering futile the doing of the thing asked. Plaintiff also contends that, even recognizing the existence of this made land, he is entitled to free ingress and egress to and from the water, over the made land, from and to what was once his strip of water front, and that, if defendant is allowed to construct a solid row of houses between his said upland and the present water line, he will be shut out. Wheth-

er or not plaintiff is the owner of the made land, the court is not now called upon to say; and whether or not, not being the owner, he has any such right of way over it as is claimed, it is sufficient to say that defendant expressly disclaims any purpose or intention to construct a solid line of houses. On the contrary, he has testified as to his plans, and has filed herein a plat (Defendant's Exhibit A), from which it appears that on the Treadwell end is a wide passage to the beach, as that beach now is, and that between the buildings to be erected by him he has, in each instance, left a passageway six feet wide, so that there would be ample means of access to and egress from said upland to the present water line.

I can see no equity for an injunction in this case. But, in harmony with the reformed Code of Procedure, I will not dismiss the action. Plaintiff may, if he is so advised, amend his complaint and proceed as in an ejectment, or for damages, or take such other steps as may be proper, upon paying the costs of the present proceeding.